Good morning, your honors. Jason Carr, appearing on behalf of Appellate TAC. The most important factual point in application of the 5G sentencing guideline provision to the facts of this case are that the two firearms that were charged, the federal conviction of felon in possession that my client currently labors under, those guns were the proceeds of a burglary. They were the felon in possession charge and the burglary are not only inextricably intertwined. The felon in possession charge is a wholly a subset of the burglary. All of the felon in possession conduct occurred as the burglary occurred. Well, wait a second. Okay. That seems to me to be kind of the big question here. So you have the burglary in which he gets the weapons, correct? Yes. And two days go by? It's in dispute between a day and two days. A couple days. One to two days. Anyway, more than, it's not immediate. A day or so goes by and then he's found with the weapons and arrested as felon in possession, correct? Well, he's found, and this may be important, he's found in a van that contained all the proceeds of the burglary, the firearms and the other items he purloined out of the house. So is your position that really the felon in possession somehow started at the moment he commits the burglary and then it's just a continuing crime? It's an excellent question because that's important. Felon in possession is a continuing offense, but as this case talks about, and Marler, and I have to thank the government for citing that in their answering brief because it's an extremely helpful case to me that they rely upon primarily. Marler says that the continuing offense doctrine is not helpful to apply in certain circumstances. Marler is a case about related cases for criminal history purposes, and there they talk about an escape and how an escape is a continuing offense in some context. But for the purposes of determining whether criminal acts are related, a continuing offense should be, the focus should be on the time of inception of the continuing offense. And Marler says this pretty explicitly, that forget about continuing offense doctrine in that context. What we look at is the time the possession occurred or, in Marler, the time the escape occurred. So if the burglary took place today and he's arrested two years from now with the weapons, is it relevant conduct? Then, Your Honor, you're getting to a different question. Then the government would have an alternative argument of a temporal transmutation of the character of that firearm. Because if an individual possessed a firearm for a prolonged period of time, the argument that that firearm was merely a proceed of a burglary would start to be diminished and that there would be a strong argument that that person converted that firearm from a proceed into an actual implementation of future crime. So let's say they have the burglary and they put the stuff in a warehouse for two years and then nothing. I mean, it's pristine. It's like a bank vault. And then he goes in two years later and he takes it out. Would you still argue that that would be relevant conduct, the two? I would, and I would submit that that, my position in that case, would be stronger than the case of the individual who had the firearm for a year and it was clear it was used for other purposes. But it would be worse than the situation that I have here. So in the template of the strength of the spectrum of the strength of my legal position, my case that I have would be the strongest. Your hypothetical would be less strong, but still a cogent argument can be made. The least strong would be a case where an individual had this firearm for years and there's an argument the government would have for transmutation of its property. But the important thing here is that when the individual, for this context, I would submit that this court should look at the moment of the inception of possession and there's strong authority, as described in Marley, that that is the fulcrum point of analysis. When he took possession of that firearm, he was in the midst of committing a burglary. Relevant conduct is conduct that occurred during the commission of the offensive conviction. Here there's no doubt if you focus on the time the possession took place here, during the burglary, that the burglary was occurring. Which gets to another point, another case cited by the government in their answering brief on page 14 and 15 of the canon, which says that relevant conduct, that conduct is not relevant conduct, it is a discreet, identifiable, illegal act. There is no discreet, identifiable, illegal act here. The two acts are an absolute identity. The mens rea and the actus rea of Mr. Tack when he's committing the burglary is the exact same as his mens rea and actus reas at the time he took possession of the firearm. This is an instance of one criminal act giving rise to multiple criminal liabilities by two different sovereigns. Now what 5G 1.3 tries to do, and it helps to get to the purpose of it, what it tries to do is put that defendant in the same position as if he had been charged with both criminal acts from two statutes from the criminal act by the same sovereign at the same time. That's all it's trying to do. I don't want to just parse words, but you correctly stated the standard, I think, that the act of burglary has to occur during the commission of the felon in possession offense, but if I read your brief correctly, you basically argue, in effect, that the firearm possession occurred during the act of the burglary. And that's not exactly a small semantic difference. It seems like, in effect, your brief argues the averse of what's required here. And the government tries to make that point, and I suppose I have some difficulty understanding, and I think the difficulty springs from the fact that we're dealing with an unusual factual circumstance. It's difficult to think of an offense like possession of a firearm as exactly when does that occur and when is the discrete act of the continuing offense, when is that relevant. And here we know that during the period of time of the burglary, however long it took him to enter the house and exit the house, during that period of time, 5, 10 minutes, he took possession of this firearm. And he took that possession of the firearm as part of the criminal act of committing a burglary. See, I mean, I guess I could think of a different situation. Let's say he's a felon. He comes into possession of a firearm, but he doesn't steal it, you know, somebody gives it to him. So at that moment, he would be in violation and he would be a felon in possession, right? Yes. Now he has this firearm, and now he goes in and he burgles a house. So then it seems to me that's the situation described by your brief, which is different than when I go in and I burgle the house and then I get the firearms. Your hypothetical, once again, would be a case where my argument would be weaker. There is some authority that supports the idea that if you possess a firearm solely to commit a discrete crime, then perhaps those cases would be related. But it's a much more difficult challenge. And this Court talks about that in Marlor, where the issue there is whether possession of a firearm was related to conspiracy to commit a robbery. And this Court talks there about there were discrete facts in the record that showed that he possessed that firearm before committing the robbery and used it, I believe, this Court describes how he fired it into a wall on a deer. There was affirmative evidence that the firearm possession was separate and not wholly related to the planned robbery. Do you want to say it's time for a rebate? I do, Your Honor. But I would finish by saying that we don't have any of that factual variance here. Good morning. May it please the Court. Elizabeth Olsen on behalf of the United States. I would just point out application note 2A to 5G1.3 explicitly, expressly directs that where only part of the prior offense is relevant conduct to the instant offense, 5G1.3b doesn't apply. Now, that prior offense was a burglary. The defendant broke into the victim's home. He stole furniture, computer equipment, savings bonds, a coin collection, and two firearms. Even if we allow for the purposes of argument that the stealing of the firearms is relevant conduct to the instant offense, the stealing of the firearms was only part of the prior offense. And under the application note, it explicitly, and I quote, actually I can't quote, cases in which only part of the prior offense is relevant conduct to the instant offense, 5G1.3b doesn't apply. Now, the other piece of this is that for 5G1.3b to apply, the prior offense must have been used to enhance the defendant's offense level for the current offense. That didn't happen here. The defendant got a two-level enhancement because the firearms were stolen. But that two-level enhancement provision applies regardless who stole the firearms, and in fact, it applies whether the defendant, regardless whether the defendant knew or even had reason to know that the firearms were stolen. So that enhancement, because the firearms were stolen, in no way takes into account the fact that this defendant broke into a victim's home, committed the burglary, and stole the firearms. Now, for the prior offense to actually have been taken into account in enhancing the defendant's offense level, at the very least, the district court would have had to apply the four-level enhancement under the Felony Possession Guideline 2K2.1b4 for possessing the firearm in connection with another felony, that being the burglary. And there's an application note that says that where someone goes in, burgles the house, either during a robbery or a burglary, if they come into possession, there's a four-level enhancement that applies there if it's relevant conduct. The judge didn't do that in this case. And frankly, I don't know that that would have been enough, because even that wouldn't take into account all of the prior offense, which is the theft of all of the other proceeds, the computer equipment and furniture and savings funds, et cetera. What the Court would have had to do, which I don't think it could do because I don't think it had the information in front of it, but what the Court would have had to do to truly treat the burglary as relevant conduct would be to calculate the defendant's guideline using the burglary guideline, first of all, 2B2.1. The reason I don't think it could do that is because there's an enhancement based on the total value of the goods stolen, and I don't see anything in the record that the district court had the information of the total value of what was stolen in the burglary. Then calculate the felon in possession guideline. Then use the guideline for multiple counts and figure out what the range would be that way. Now, that's what the district court, the defendant relies on the case, the Eighth Circuit case in Washington, and that's what the district court did there. The district court used the armed robbery guideline with enhancements, six-level enhancement because the firearm was discharged, or seven, six-level enhancement because the victim was injured, came up with a guideline range that included a sentence of 250 months, and then in sentencing the defendant for being a felon in possession of a firearm, sentenced him to 240 or 250 months using, you know, treating the armed robbery as relevant conduct and thus using the armed robbery guideline. There's another, it seems that we're focused in the Eighth Circuit for some reason in this case, because you have the Washington case that you cited, and then I believe Mr. Tkach's counsel cites the Morris case, which is a more recent case out of the Eighth Circuit. Why wouldn't we follow that lead? Well, the two distinctions in the Morris case, which I think both are very important, one is, at least from the opinion, and we can't know for sure, but at least from the opinion, the only indication is that the only things that were stolen were the firearms. So, again, part of the application of 5G 1.3b requires that all of the prior offense be relevant conduct and instant offense, and at least from what we can discern from the Morris opinion, the stealing of the firearms was the only, you know, was the only thing that was stolen. If you had a situation where it was only the firearms, then would the burglary be committed in connection with the felon in possession offense? See, and I don't think, I mean, I would disagree with the Eighth Circuit's analysis there, because I think that while the felon in possession offense occurred during the burglary, you know, can you say the burglary occurred during the felon in possession, which only occurred halfway through the burglary? I mean, that's, it is, it's a very interesting question. The other, but the other distinguishing difference in Morris, of course, because the district court was treating that as relevant conduct, the district court did apply the four-level enhancement for the defendant's possession of the firearm in connection with another felony. And I think that this analysis is telling, because while we don't have the information to calculate what the range would have been using the burglary guideline, I don't think we have that information, you can look at, with that four-level enhancement for possession of the firearm in connection with another felony, that increases the defendant's guideline range by approximately 30 months. And what the defendant is asking for in terms of getting credit for the time he's been spent incarcerated on the burglary is about 27 months. So if this were to be remanded back, I think that with the direction that the burglary is supposed to be treated as relevant conduct, in the end result, I don't think it would make a difference, and perhaps the defendant's sentence would increase a little bit. And the reason that I think that's telling is that it shows that the purposes of 5G1.3b have been fulfilled. I mean, the purpose of 5G1.3b is to mitigate the possibility that by the fortuity of being sentenced in two different forums, the defendant's sentence is going to be grossly increased. And so if it were remanded, would it then also come? If we were to disagree with you and agree with the defense counsel's characterization, if it were remanded, would the judge then have to also take into account the value of the other stuff that was stolen, and would that change the level? We would argue, if the burglary is going to be considered relevant conduct, then we would have to do that analysis using the burglary guideline if the probation office can get the information necessary to do that. I don't think that that's necessary because, I mean, 5G1.3b specifically says that it applies where all of the prior offense is relevant conduct to the incident offense, and I don't know that the burglary and the stealing of the savings bonds, the burglary and the stealing of the computer equipment, how that is relevant to being a felon in possession of a firearm. But if it were to go back, I think that my point being that the goal of 5G1.3b is to approximate the total amount of incarceration that a defendant would have gotten if he'd been sentenced for both things at the same time. And what you see, just with that four-level increase for possession of a firearm in connection with another felony, is that, in fact, that did approximate the total amount of time that he's going to spend being incarcerated is sort of approximated by that. It might be even more under the full guideline calculation with the burglary, depending on, I don't have any idea, the savings bonds and coin collection, computer equipment. We don't know what that value was. The one other point that I wanted to make, and this is a correction to the gentleman's brief. After the briefing in this case, this Court decided the Armstead decision. And I think that what that case showed is that both the government and the defense counsel were wrong about how the district court is supposed to use 5G1.3b at sentencing post-Booker. We had argued in the last couple pages of our brief that although the Court has to start with the correct starting point, correctly calculated guideline range, that that was done as soon as the offense level and the criminal history category came up with the range. What the Court said in the Armstead decision just a few weeks ago is that, no, the Court has to go all the way through, including the Chapter 5 considerations, so that if 5G1.3b applies, the Court would have to subtract that time of credit for time in the State sentence in coming up with the starting point of the guideline range for the purposes of sentencing. I think the defense counsel was also incorrect in asserting throughout the brief that because the word shall appears in the guideline, that the Court doesn't have any discretion. In fact, post-Booker, once that is true, I mean, we were incorrect. The judge, when it applies, would have to take into account in coming up with that starting point, the judge has wide discretion to do whatever it likes. In fact, in the Armstead decision itself, what the Court did was remand to the district court that this Court concluded that 5G1.3b did apply, remanded to the district court to either give the credit or explain why he was choosing not to. It looks like my time is up. I'm sorry. Thank you. I was wrong about nothing. That's exactly what I said in my brief. But there's a difference between procedural and substantive error, of course. And we're talking about procedural here, error in this case. First point is that did the theft, the burglary, did that enhance the sentencing guideline sentence? Yes, in fact, it did. And the government is to stop from saying otherwise because during the change of plea, they specifically tried to cajole my client, Tack, into admitting that the firearms, that he would get enhancement because the firearms were stolen because he burglarized them. And that's on page 57 of the record. So that issue is moot. The government's argument, their argument that we should take the burglary, only part of the burglary is included because a firearm is only one of the proceeds of a burglary is kind of a crazy theory. What they're saying is that burglary should be segmented into every one of its discrete acts and that every discrete act of the burglary must have a unique possession case. What do you think the application note means? It's talking about criminal clusters. In related case doctrine, a lot of times what you'll have is somebody will have a series of convictions that were charged that are considered related to each other for a variety of reasons, one criminal episode, but multiple counts. And what they're talking about there is if you have multiple counts, all of the counts should be relevant conduct. There's no authority, and the government certainly has never cited any, that supports this proposition that you could take a crime like burglary, which is inextricably intertwined to a felon in possession, and say, well, it's not relevant conduct because every part of the burglary doesn't have perfect identity with the elements of felon in possession. I mean, it's a crazy theory, and of course, they have no support for that, and it's just not the law. I would urge this Court, 5G1.3 applies in this case. The district court should have applied it. After applying it, it's free to bury the sentence under the strictures of the post-Booker sentencing regime. So the Court will have discretion to do that if we go back. But the first starting point is the correct application of the guidelines that did not occur here. This case should be remanded. Thank you. Thank both counsel for your argument this morning. The case of United States v. TAC is submitted.
judges: Farris, Noonan, McKeown